United States District Court
Southern District of Texas
**ENTERED**
March 25, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN BENAVIDES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-01289 |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is the Motion to Dismiss Plaintiff's First Amended Original Complaint filed by Defendant Harris County, Texas ("Harris County"). (Dkt. 11). Having carefully reviewed the motion, response, reply and applicable law, and the entire record, the motion is **GRANTED**. To the extent that response to the motion seeks leave for plaintiff to conduct discovery against Harris County and further amend his complaint, this requested relief is **DENIED**.

### FACTUAL BACKGROUND

For purposes of the Court's consideration of the pending motion, the following facts alleged in the amended complaint are taken as true. (Dkt. 9). This civil rights lawsuit arises from a home invasion investigation by Harris County sheriff deputies. Plaintiff Stephen Benavides ("Benavides") received a call from his daughter concerning what she believed was a possible intruder downstairs in her home where she was alone her children.

Benavides then told his daughter to call 911 and left to confront the situation and/or help the police. Benavides' daughter called 911, "informing them of the [situation] and that her father was on his way as well." *Id.* at 2. When Benavides arrived at his daughter's home with one of his sons, Benavides searched/secured the home with his dogs and found nothing of concern. Believing everything was fine, Benavides went to the front door so that he could smoke a cigarette outside while waiting for the police to arrive.

As soon as he opened the door, Benavides could see an officer through the crack and immediately started raising his hands in the air. "Almost instantaneously" Defendant Harris County Deputy Jose Nunez ("Deputy Nunez") who "had never announced his presence or anything else, fired at Benavides striking him in the leg." (Dkt. 9 at 2). "After falling to the ground, Benavides watched as [Deputy] Nunez and other officers entered the home and point[ed] their weapons at his wife, his kids and grandkids [while] yelling 'shut the fuck up' at them and more." (Dkt. 9 at 3). "As a result of being shot by [Deputy] Nunez, Benavides was hospitalized, operated on and has continued to suffer from both physical and emotional injuries." *Id.* Benavides subsequently brought this action against Deputy Nunez and Harris County seeking to recover damages for his injuries.[1]

The amended complaint asserts federal constitutional claims under 18 U.S.C. § 1983 and, in the alternative, Texas state law claims under the Texas Torts Claims Act, Texas Civil Practice & Remedies Code §101.021 *et. seq.* ("TTCA") against Harris County. (Dkt. 9 at 3-7). In support of his Section 1983 claims, Benavides alleges that

---

[1] Benavides' claims against Deputy Nunez are addressed in a separate order.

Deputy Nunez used excessive force by shooting and detaining him at his daughter's home in violation of his Fourth and Fourteenth Amendment rights. (Dkt. 9 at 4). Benavides asserts that under the holding in *Monell v. New York City Dept. of Soc. Servs.*, 436 U.S. 658 (1978), Harris County is liable for this unlawful conduct because the county has a custom, policy, or practice of using excessive force on individuals, and not properly training, supervising, and/or disciplining its officers who use excessive force. *Id.* In support of his TTCA claims, Benavides asserts that Deputy Nunez's actions were negligent, and Harris County is both directly and vicariously liable for Deputy Nunez's conduct. (Dkt. 9 at 6-7).

In the pending motion, Harris County argues that it is entitled to the dismissal of the Section 1983 constitutional claims because Benavides has failed to plead facts establishing that an official county policy, practice or custom was the moving force or direct cause of his injuries. Harris County also argues that it is entitled to dismissal of the TTCA claims because Benavides has failed to plead facts establishing a valid waiver of Harris County's governmental immunity under the TTCA. The Court considers these arguments in turn below.

## LEGAL STANDARD

### I.     Federal Rule of Civil Procedure 12(b)(6)

Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and

is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Id.*

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). In conducting this analysis, the Court does not

consider legal conclusions as true, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

## ANALYSIS

### II.     Municipal Liability Under 42 U.S.C. § 1983

"Section 1983 provides a remedy against 'any person' who, under color of state law, deprives another of rights protected by the Constitution." *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). A local government may not be sued under Section 1983 for the deprivation of rights guaranteed by the Constitution or federal law inflicted solely by its employees or agents. *See Monell*, 436 U.S. at 691 ("[A] municipality cannot be held liable under § 1983 on a respondeat superior theory."). However, "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury," the government agency is liable under Section 1983. *Id*.

To state a claim under Section 1983, "a plaintiff must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peterson v. City of Fort Worth*, 588 F.3d 838, 847 (5th Cir. 2009).

> "An official policy is either (1) a policy statement, ordinance, regulation, or decision that is officially adopted and promulgated by the municipality's lawmaking officers or by an official to whom the lawmakers have delegated policy-making authority; or (2) a persistent, widespread practice of officials or employees, which, although not authorized by officially adopted and promulgated policy, is so common and well-settled as to constitute a custom

that fairly represents the municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body has delegated policy-making authority." *McIntosh v. Smith*, 690 F. Supp. 2d 515, 530 (S.D. Tex. Feb. 2, 2010) (citing *Webster v. City of Houston*, 735 F.2d 838, 841 (5th Cir. 1984) (en banc)).

A local government's decision not to train certain employees about their legal duty to avoid violating citizens' rights and adequately supervise them can only be considered an official government policy where the failure amounts to "deliberate indifference" to the rights of persons with whom the employee comes into contact. *Connick v. Thompson*, 563 U.S. 51 (2011) "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of County Comm'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 410 (1997).

### A. Policy of Allowing Excessive Force

In the amended complaint, Benavides alleges that Harris County "is liable under § 1983 because [of its] 'turn a blind eye' approach to the use of excessive force [that] is a persistent, widespread practice of the County employees – namely police officers – [and] that, although not authorized [as an] officially adopted policy, is so common and well settled as to constitute a custom that fairly represents official policy." (Dkt. 9 at 5-6). He further alleges that Harris County "had actual or constructive knowledge of each practice, custom, and/or policy or procedure and numerous prior incidents of such conduct and/or inaction as to establish accession to that custom by the policy makers" and that Harris County's conduct demonstrates a "deliberate indifference to the risk that a violation of a

particular constitutional or statutory right will follow the decision." (Dkt. 9 at 6). Benavides asserts that such "policy and/or customs were the 'moving force' behind the constitutional violation (excessive force) exacted on Plaintiff." *Id.* at 5. The Court finds that these allegations are insufficient to state a claim for excessive force under Section 1983 against Harris County.

Benavides' complaint provides no facts to support these generic, boilerplate allegations against Harris County. *See McClure v. Biesenbach*, 355 F. App'x 800, 803–04 (5th Cir.2009). Such conclusory allegations "unsupported by facts, are not entitled to the presumption of truth and are insufficient to permit an inference of an official custom or policy that resulted in Benavides' injuries. *Davenport v. City of Garland, Tex.*, No. 3:09–CV–798–B, 2010 WL 1779620, at *2–3 (N.D.Tex. Apr.9, 2010). Because Benavides failed to plead facts that "show similar incidents of excessive force," knowledge or approval by a policymaker of a pattern or practice of excessive force, or a failure to train officers by a final policymaker, he failed to state a plausible claim of municipal liability. *Id.*; *see also Knight v. City of Balch Springs*, 3:11–CV–1122–B, 2011 WL 3519938, at *4 n. 4 (N.D. Tex. Jul 25, 2011) (collecting cases from other jurisdictions), *recommendation adopted by* 2011 WL 3510877 (N.D.Tex. Aug.10, 2011).

Benavides' reliance on the holding in *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 517 (1993) to argue that his pleadings are sufficient to state claims for municipal liability under Section 1983 is misplaced. As the Fifth Circuit recently held:

> It is, of course, true that Leatherman, a pre- Twombly case, held that courts must not apply a "heightened" pleading standard to *Monell* claims. Although [Plaintiff] argues otherwise, however, Leatherman did not require courts to accept "generic or boilerplate" pleadings in this case or in any other context. Indeed, our precedents make clear that the Twombly standard applies to municipal liability claims. To survive a motion to dismiss with respect to his excessive force claims, [Plaintiff's] complaint "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."

*Ratliff v. Aransas Cty.*, 948 F.3d 281, 284 (5th Cir. 2020) (citations omitted).

The Court finds that Benavides' pleadings do not contain sufficient facts, if accepted as true, to state an excessive force claim under Section 1983 against Harris County that is plausible on its face. Accordingly, Harris County is entitled to dismissal of these claims. *Davenport*, WL 1779620, at *2–3.

## B. Failure to Train and Supervise Officers

Next Benavides alleges that Harris County has a custom, practice or policy of failing to adequately train and supervise its officers regarding the use of deadly force that was the "moving force" behind the alleged violation of his constitutional rights. (Dkt. 9 at 5). The failure to train or supervise can amount to a policy if there is deliberate indifference to an obvious need for training and supervision where citizens are likely to lose their constitutional rights on account of novices in law enforcement." *See Peterson*, 588 F.3d at 849. To hold a municipality liable for failure to train and supervise an officer, it must have been obvious that "the highly predictable consequence of not training" or supervising its officers was that they "would apply force in such a way that the Fourth Amendment rights of [citizens] were at risk." *Brown v. Bryan Co., Okla.*, 219 F.3d 450, 461 (5th Cir. 2000).

Here, Benavides fails to allege that his alleged constitutional violations were a highly predictable consequence of Harris County's failure to train and supervise its officers. His complaint alleges no facts whatsoever about Deputy Nunez's training or supervision beyond conclusory statements that Deputy Nunez's conduct was "uncalled for" and his alleged lack of training or supervision constituted Harris County's deliberate indifference to Benavides's rights. (Dkt. 9 at 17). Furthermore, the fact that the shooting occurred does not establish a failure to train and supervise that was the moving force behind the incident. Accordingly, Harris County is entitled to dismissal of these claims. *See Cox v. City of Dallas, Texas*, 430 F.3d, 734, 748 (5th Cir. 2005).

### C. Ratification

Benavides appears to allege that Harris County is also liable under Section 1983 because it failed to discipline Deputy Nunez following the shooting. (Dkt. 9 at 16). To the extent that he is making this argument, the Court disagrees. "If the authorized policymakers approve a subordinate's decision and the basis for it, their ratification would be chargeable to the municipality because their decision is final." *City of St. Louis v. Praprotnik*, 485 U.S. 112 (1988). However, the Fifth Circuit has limited the theory of ratification to "extreme factual situations." *Compare Snyder v. Trepagnier*, 142 F.3d 791, 798 (5th Cir. 1998) (refusing to find ratification where officer shot fleeing suspect in the back), *with Grandstaff v. City of Borger*, 767 F.2d 161 (5th Cir. 1985) (finding ratification where in response to a minor traffic violation, three patrol cars engaged in a high-speed chase during which they fired wildly at the suspect; the object of this chase took refuge on an innocent person's

ranch, where the entire night shift of the city police force converged and proceeded to direct hails of gunfire at anything that moved, killing the innocent rancher as he emerged from his own vehicle.). Under Fifth Circuit precedent, this case does not present an extreme factual situation. Accordingly, Harris County is entitled to dismissal of all Section 1983 claims asserted against it in this action.

### III.     Governmental Immunity and the Texas Tort Claims Act

Finally, Benavides asserts, "as an alternative pleading," state law claims for negligence under the TTCA against Harris County. (Dkt. 9 at 6). In response, Harris County has asserted its immunity from these claims. "Under Texas law, sovereign immunity exists to 'protect the State and its political subdivisions from lawsuits and liability for money damages.'" *El Paso Indep. Sch. Dist. v. Richard R.*, 567 F. Supp. 2d 918, 935 (W.D. Tex. 2008) (quoting *Mission Consol. Independent School Dist. v. Garcia*, 253 S.W.3d 653, 655); *Chambers-Liberty Ctys. Navigation Dist. v. State*, 575 S.W.3d 339, 344 (Tex. 2019). "Sovereign immunity" includes "governmental immunity," which "protects political subdivisions of the state, including municipalities." *El Paso Indep. Sch. Dist.*, 567 F. Supp. 2d at 935 (quotation marks and citations omitted); *Robison v. CNA Ins. Co.*, No. 1:17-CV-508, 2018 WL 10604116, at *6 (E.D. Tex. May 9, 2018) (governmental immunity protects "political subdivisions of the state, such as...cities." (quoting *Travis Cent. Appraisal Dist. v. Norman*, 342 S.W.3d 54, 57–58 (Tex. 2011))). "Both sovereign and governmental immunity deprive the Texas courts of subject matter jurisdiction." *El Paso Indep. Sch. Dist.*, 567 F. Supp. 2d at 935 (citation omitted).

Sovereign immunity has two parts: "immunity from liability and immunity from suit." *Id.* (citation omitted). "Immunity from suit bars suit against the entity altogether." *Id.* (citation omitted). As governmental units, municipalities are "immune from suit and tort liability unless the legislature has waived immunity." *Duffie v. Wichita Cty.*, 990 F. Supp. 2d 695, 717 (N.D. Tex. 2013) (citing *Harris County v. Dillard*, 883 S.W.2d 166, 168 (Tex. 1994)). Unless a constitutional or statutory provision waives a governmental unit's immunity, that unit may not be liable for the torts of its officers or agents. *Id.* (citing *Dallas County Mental Health and Mental Retardation v. Bossley*, 968 S.W.2d 339, 341 (Tex. 1998)). "If the Legislature elects to waive immunity by statute, it must do so by clear and unambiguous language." *Chambers-Liberty Ctys.*, 575 S.W.3d at 344 (citing TEX. GOV'T CODE § 311.034). A plaintiff has the burden of "alleging a valid waiver of immunity" to show that the court has subject-matter jurisdiction over state-law claims brought against a governmental unit. WL 10604116, at *6 (quoting *Ryder Integrated Logistics, Inc. v. Fayette Cty.*, 453 S.W.3d 922, 927 (Tex. 2015)).

The Court finds that Benavides has not alleged sufficient facts to establish that Harris County's immunity has been waived with respect to his negligence claim under the TTCA. "[The TTCA] waives governmental immunity for personal injury 'so caused by a condition or use of tangible personal property or real property.'" *Starrett v. City of Richardson, Tex.*, 766 F. App'x 108, 111 (5th Cir.), *cert. denied*, 140 S. Ct. 122, (2019). TEX. CIV. PRAC. & REM. CODE § 101.021(2). Here, Benavides alleges that his shooting was caused by the condition or use of tangible property—Deputy Nunez's

firearm. However, under the TTCA a governmental entity "uses" personal property only if it "authorizes or orders an employee to use [the] tangible personal property for a specific purpose." *Tex. Dep't of Crim. Just. v. Rangel*, 595 S.W.3d 198, 206 (Tex. 2020). "[G]enerally approving [the] use" of the property is not enough. *Id.* at 207-08; *see Harris County v. Annab*, 547 S.W.3d 609, 613 (Tex. 2018) (the allegation that a county "enabled, authorized, or approved [a constable's] use of the firearm does not amount to an allegation that the county used the firearm and "does not trigger the Tort Claim Act's waiver of immunity"). As courts have held, instead, the governmental unit must authorize or order the use of the property in the specific incident at issue. *Id.* For example, a county did not "use" a firearm when a constable used his county-issued firearm in a personal dispute while he was off duty. *Annab*, 547 S.W.3d at 609. However, when the Texas Department of Criminal Justice authorized a prison security officer to use riot-control devices "specifically in response to [an] incident," the Department "used" those devices and immunity did not apply. *Rangel*, 595 S.W.3d at 208.

The facts of this case are closer to *Annab* than *Rangel*. *Chavez v. Alvarado*, No. CV H-21-867, 2021 WL 3089289, at *9 (S.D. Tex. July 22, 2021). Deputy Nunez was generally authorized to use his duty weapon during a home invasion investigation, but Benavides has not alleged facts showing that Harris County specifically authorized or ordered Deputy Nunez or anyone else to use those weapons in response to the situation involving Benavides. Accordingly, the TTCA does not apply to waive Harris County's immunity from the state law claims. *Id.*

Harris County also argues that Benavides can never plead any facts in this case establishing that its immunity has been waived because of the TTCA's intentional-tort bar. The Court agrees with this argument. The TTCA "does not waive immunity for claims arising out of intentional torts," including assault. *City of Watauga v. Gordon*, 434 S.W.3d 586, 594 (Tex. 2014) (citing TEX. CIV. PRAC. & REM. CODE § 101.057(2)). Claims based on a police officer's intentional shooting are intentional-tort claims subject to the intentional-tort bar. *See, e.g., Est. of Sizer by & through Sizer v. Cameron*, No. A-15-CA-01143-SS, 2017 U.S. Dist. LEXIS 84486, 2017 WL 2418316, at *13 (W.D. Tex. June 1, 2017) (the TTCA barred the plaintiffs' statutory wrongful-death claim because the "essence" of the claim was that a police officer used excessive force against the decedent and "such a claim sounds in intentional tort" (quotation marks omitted)); *Hatcher v. City of Grand Prairie*, No. 3:14-CV-432, 2014 U.S. Dist. LEXIS 107678, 2014 WL 3893907, at *7 (N.D. Tex. Aug. 6, 2014). The TTCA's intentional-tort bar also applies to negligence claims "based on 'the same conduct' as the intentional tort claim." *Saenz v. City of El Paso*, 637 F. App'x 828, 831 (5th Cir. 2016) (citing *Tex. Dep't of Pub. Safety v. Petta*, 44 S.W.3d 575, 580 (Tex. 2001)).

Benavides does not dispute that, in support of his federal constitutional claims under Section 1983, he alleges that he was "unlawfully assaulted" by Deputy Nunez—conduct that constitutes an intentional tort. (Dkt. 9 at 14). However, Benavides argues that he uses the term unlawful assault "referring only to[his] federal claims." *Id.* He argues that the intentional-tort bar does not apply to his TTCA claims because (1) these claims are for

"negligence" and (2) are asserted in the alternative to the Section 1983 claims. (Dkt. 19 at 16-17). The Court finds this argument unpersuasive. Benavides' claims for negligence are based on the exact same conduct as Section 1983 claims. (See Dkt. 9 at 2-3) Benavides' complaint alleges no "distinct facts" supporting his negligence and intentional-tort claims, placing the negligence claims "outside the TTCA's 'limited waiver of sovereign immunity.'" *Saenz*, 637 F. App'x at 831 (quoting *Goodman v. Harris Cty.*, 571 F.3d 388, 394 (5th Cir. 2009)); *see Aguirre v. City of San Antonio*, 995 F.3d 395, 422 (5th Cir. 2021) ("intentional conduct, no matter how it is pled, falls under the TTCA's sovereign immunity waiver exception" (citing *Petta*, 44 S.W.3d at 580)). Under these circumstances the Court finds that Benavides cannot allege any different facts in this case that would overcome the TTCA's intentional-tort bar of his state law claims. Accordingly, Benavides' TTCA state law claims should be dismissed. *Chavez*, WL 3089289, at *9.

## CONCLUSION

Benavides has already filed an amended complaint in this action. Benavides was also given the opportunity to amend his complaint again after being informed of his complaint's deficiencies and before the Court employed its time and resources to consider the pending motion. (Dkt. 8). He did not do so. Benavides has still failed to plead facts sufficient to establish any federal or state law claims against Harris County. Accordingly, for the reasons stated above the Court finds that Harris County's Motion to Dismiss (Dkt. 11) should be **GRANTED.** To the extent that Benavides seeks leave to conduct discovery against Harris County and further amend his complaint, this requested relief is **DENIED.**

SIGNED at Houston, Texas, this 25th day of March, 2022.

*[signature: George C. Hanks Jr.]*

GEORGE C. HANKS, JR.

UNITED STATES DISTRICT JUDGE