United States District Court
Southern District of Texas
**ENTERED**
March 25, 2022
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN BENAVIDES, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-01289 |
| | § | |
| HARRIS COUNTY, TEXAS, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## **MEMORANDUM OPINION AND ORDER**

Pending before the Court is the Motion to Dismiss Plaintiff's First Amended Original Complaint filed by Defendant Harris County Sheriff Deputy Jose Nunez ("Deputy Nunez"). (Dkt. 21). Having carefully reviewed the motion, response, reply and applicable law, and the entire record, the motion is **DENIED**.

## **FACTUAL BACKGROUND**

For the purpose of considering the pending motion, the following facts alleged in the amended complaint are accepted by the Court as true. (Dkt. 9). This civil rights lawsuit arises from a home invasion investigation by Harris County sheriff deputies. Plaintiff Stephen Benavides ("Benavides") received a call from his daughter concerning what she believed was a possible intruder downstairs in her home where she was alone with her children. Benavides then told his daughter to call 911 and left to confront the situation and/or help the police. Benavides' daughter called 911, "informing them of the [situation]

and that her father was on his way as well." *Id.* at 2. When Benavides arrived at his daughter's home with one of his sons, Benavides searched/secured the home with his dogs and found nothing of concern. Believing everything was fine, Benavides went to the front door so that he could smoke a cigarette outside while waiting for the police to arrive.

As soon as he opened the door, Benavides could see an officer through the crack and immediately started raising his hands in the air. "Almost instantaneously" Deputy Nunez who "had never announced his presence or anything else, fired at Benavides, striking him in the leg." (Dkt. 9 at 2). "After falling to the ground, Benavides watched as [Deputy] Nunez and other officers entered the home and point[ed] their weapons at his wife, his kids and grandkids [while] yelling 'shut the fuck up' at them and more." (Dkt. 9 at 3). "As a result of being shot by [Deputy] Nunez, Benavides was hospitalized, operated on and has continued to suffer from both physical and emotional injuries." *Id.* Benavides subsequently brought this action against Deputy Nunez and Defendant Harris County, Texas seeking to recover damages for his injuries.[1]

The amended complaint asserts federal constitutional claims under 18 U.S.C. § 1983 against Deputy Nunez. In support of his Section 1983 claims, Benavides alleges that Deputy Nunez used excessive force by shooting and detaining him at his daughter's home in violation of his Fourth and Fourteenth Amendment rights. (Dkt. 9 at 4). In the pending motion, Deputy Nunez argues that he is entitled to qualified immunity and to the dismissal

---

[1] Benavides' claims against Defendant Harris County, Texas are addressed in a separate order.

of this action. He asserts that Benavides has failed to plead sufficient facts to overcome his qualified immunity defense to this action. The Court considers these arguments below.

## LEGAL STANDARD AND APPLICABLE LAW

**Federal Rule of Civil Procedure 12(b)(6)**

Under FED. R. CIV. P. 12(b)(6), litigants may move to dismiss asserted claims for "failure to state a claim for which relief can be granted." Under Rule 8 of the Federal Rules of Civil Procedure, a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). A Rule 12(b)(6) motion tests the formal sufficiency of the pleadings and is "appropriate when a defendant attacks the complaint because it fails to state a legally cognizable claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). The court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Id*.

To defeat a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556). "Where a complaint pleads facts that

are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id*. (quoting *Twombly*, 550 U.S. at 557).

When plaintiffs "have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570; accord *Iqbal*, 556 U.S. at 678 (noting that "[d]etermining whether a complaint states a plausible claim for relief will…be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense"). In conducting this analysis, the Court does not consider legal conclusions as true, and "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

**Qualified Immunity**

The doctrine of qualified immunity protects government officers from civil liability in their individual capacities if their conduct does not violate clearly established federal statutory or constitutional law of which a reasonable person would have known. *Kisela v. Hughes,* 138 S. Ct. 1148, 1152 (2018). Once raised as a defense, plaintiff has the burden to demonstrate that qualified immunity should be pierced. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). This inquiry requires a two-prong analysis, in which the court determines (1) whether the official violated a statutory or constitutional right, and (2) whether the unlawfulness of the official's conduct was "clearly established" at that time. *District of Columbia v. Wesby,* 138 S. Ct. 577, 589 (2018); *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011). A right is "clearly established" only where pre-existing law

"dictate[s], that is truly compel[s] (not just suggest[s] or allow[s] or raise[s] a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in these circumstances." *Sama v. Hannigan*, 669 F.3d 585, 591 (5th Cir. 2012). Even if a defendant's conduct actually violates a plaintiff's constitutional rights, the defendant is entitled to qualified immunity unless "all reasonable officials in the defendant's circumstances would have then known that the defendant's conduct violated the plaintiff's rights" *Carroll v. Ellington,* 800 F. 3d 154, 169 (5th Cir. 2015).

In the context of a motion to dismiss, to avoid dismissal based on an officer's claim of qualified immunity, the plaintiff must plead facts, which if true, establish that a constitutional violation took place, and show that under clearly established law provided that the officer's conduct was objectively unreasonable. *Zarnow v. City of Wichita Falls,* 500 F.3d 401, 408 (5th Cir. 2007). While "formulaic recitations or bare-bones allegations will not survive a motion to dismiss," *Shaw v. Villanueva*, 918 F.3d 414, 419 (5th Cir. 2019), compliance with *Iqbal* and *Twombly* requires only that the *facts* plausibly allege a constitutional violation. And the Court views the actions of a defendant for objective unreasonableness as alleged in the operative pleading, not as it would on summary judgment. As the Supreme Court recognized long ago, the legally relevant factors bearing upon the [qualified immunity] question will be different on summary judgment than on an earlier motion to dismiss. At that earlier stage, it is the defendant's conduct *as alleged in the complaint* that is scrutinized for "objective legal reasonableness. "On summary

judgment, however, the plaintiff can no longer rest on the pleadings, and the court looks to the evidence before it (in the light most favorable to the plaintiff) when conducting the [qualified immunity] inquiry." *Behrens v. Pelletier*, 516 U.S. 299, 309 (1996) (emphasis in original) (citation omitted); *accord McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curium). "Naturally, a defendant presenting an immunity defense on a Rule 12(b)(6) motion instead of a motion for summary judgment must accept the more stringent standard applicable to this procedural route." *McKenna v. Wright*, 386 F.3d 432, 436 (2d Cir. 2004).

## ANALYSIS

**Deputy Nunez Is Not Entitled to Qualified Immunity**

Under the first prong of the qualified immunity analysis, the Court finds that the facts alleged in the amended complaint are sufficient, if true, to establish a claim under Section 1983 for violation of the Fourth Amendment's prohibition on the use of excessive force against Benavides. The Fourth Amendment guarantees the right to be free from excessive force during an encounter with law enforcement. To establish a claim for violation of the Fourth Amendment's prohibition on excessive force, Benavides must plead facts establishing that (1) he suffered an injury that (2) "resulted directly and only from a use of force that was clearly excessive to the need," (3) the excessiveness of the force was objectively unreasonable. *Westfall v. Luna,* 903 F.3d 534, 547 (5th Cir. 2018) (internal quotation marks and citations omitted).

Here, Benavides alleges that he was shot and injured by Deputy Nunez in the doorway of his daughter's home. (Dkt. 9 at 2-3). Benavides alleges that when his daughter had called 911, she informed the operator that Benavides was in route to her home. *Id.* When he opened the door to step outside the home for a cigarette, Benavides had time to recognize that Deputy Nunez was standing at the door. *Id.* Benavides alleges that he immediately raised his hands in the air when he saw Deputy Nunez. *Id.* He alleges that Deputy Nunez "never announced his presence or anything else" and "almost immediately" shot Benavides in the leg as Benavides raised his hands. *Id.* There are no facts alleged suggesting that Benavides ever posed an immediate threat to Deputy Nunez's safety, that Benavides had committed any crime or made any movement that would lead an objectively reasonable officer to fear for his safety and use deadly force. *See Graham v. Connor*, 490 U.S. 386, 389 (1989). Under the second prong of the qualified immunity analysis, the Court finds that the unlawfulness of Deputy Nunez's alleged conduct was "clearly established" at that time of the shooting.[2] Deputy Nunez is not entitled to qualified immunity from this action.

## CONCLUSION

The Court finds that Benavides has plead sufficient facts, if true, to overcome Deputy Nunez's assertion of qualified immunity to this suit. Accordingly, Deputy Nunez's Motion to Dismiss (Dkt. 21) is **DENIED**.

---

[2] In his motion Deputy Nunez does not argue that Benavides failed to meet this prong of the qualified immunity analysis.

SIGNED at Houston, Texas, this 25th day of March, 2022.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE