Case 4:21-cv-01289   Document 75   Filed on 06/23/23 in TXSD   Page 1 of 14

United States District Court
Southern District of Texas
**ENTERED**
June 23, 2023
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN BENAVIDES, <br> Plaintiff, | § <br> § <br> § | |
| VS. | § <br> § | CIVIL ACTION NO. 4:21-CV-1289 |
| HARRIS COUNTY, TEXAS, <br> and DEPUTY J. NUNEZ, Individually, <br> Defendants. | § <br> § <br> § <br> § | |

## MEMORANDUM OPINION AND ORDER

Pending before the Court is a Motion for Judgment on the Pleadings filed by Defendant Jose Nunez. (Dkt. 59). Having carefully reviewed the motion, response, reply, applicable law, and the entire record, the Court finds that the motion should be **DENIED**.

## FACTUAL BACKGROUND

For purposes of the Court's consideration of the pending motion, the following facts alleged in Plaintiff Stephen Benavides' Second Amended Original Complaint are accepted as true.

Benavides received a call from his daughter concerning a possible intruder in her home. Benavides instructed his daughter to call 911, and he rushed to her house to investigate the threat. Benavides searched the home with his dogs and found nothing of concern. Believing everyone was safe, Benavides went to the front door to smoke a cigarette and wait for the police to arrive.

1

As soon as he opened the door, Benavides could see an officer through the crack and immediately started raising his hands. Nunez, a Deputy Sherriff in the Harris County Sherriff's Office, fired upon Benavides, striking him in the leg. Benavides then watched as Deputy Nunez and other officers pointed weapons at his wife, children, and grandchildren and shouted obscenities at them. Benavides was rushed to the hospital and has suffered physical and emotional injuries as a result of the shooting.

## PROCEDURAL HISTORY

On April 19, 2021, Benavides filed a federal complaint asserting constitutional claims under 18 U.S.C. § 1983 ("Section 1983") against Deputy Nunez and Defendant Harris County, Texas ("Harris County") and, in the alternative, a Texas state law negligence claim solely against Harris County under the Texas Tort Claims Act ("TTCA"). Tex. Civ. Prac. & Rem. Code §101.021. (Dkt. 1). Benavides amended his complaint the following month. (Dkt. 9).

Deputy Nunez timely filed a motion to dismiss Benavides' Amended Complaint, asserting that he is entitled to qualified immunity and that Benavides had not pled specific facts that Deputy Nunez is liable for the harm alleged. (Dkt. 21 at 5). Specifically, Deputy Nunez argued that "there was no violation of a constitutional right, nor was [his] actions unreasonable, nor was the right at issue clearly established at the time of the defendant's alleged misconduct." (Dkt. 21 at 5-6). Defendant Harris County also filed a motion to dismiss Benavides' Amended Complaint. (Dkt. 11).

On March 25, 2022, the Court denied Deputy Nunez' Motion to Dismiss. Specifically, the Court found that "[u]nder the first prong of the qualified immunity analysis . . . the facts alleged in the amended complaint are sufficient, if true, to establish a claim under Section 1983 for violation of the Fourth Amendment's prohibition on the use of excessive force against Benavides." (Dkt. 33 at 6). Additionally, the Court found that Benavides pled sufficient facts to overcome the second prong of the qualified immunity analysis because "the unlawfulness of Deputy Nunez' alleged conduct was 'clearly established' at that time of the shooting." (Dkt. 33 at 7). In a separate opinion, the Court granted Harris County's motion to dismiss. (Dkt. 32).

The parties subsequently engaged in extensive discovery. In a sworn statement, Deputy Nunez claimed the gun "accidentally discharge[d]" as he "quickly transitioned [his] weapon from [his] left hand to [his] right hand . . . [his] finger or some part of either hand hit the trigger." (Dkt. 55 at 7). In light of this disclosure, Benavides requested leave to file a Second Amended Original Complaint ("Second Complaint") for the sole purpose of reasserting his negligence claim against Harris County under the TTCA.[1] (Dkt. 48). Benavides' Section 1983 claim against Harris County remains dismissed. (Dkt. 32).

---

[1] Harris County did not file a motion to dismiss the Second Complaint under Rule 12(b)(6). Instead, Harris County filed an answer. (Dkt. 60). Harris County retains the right to file a motion for judgment on the pleadings under Rule 12(c) "[a]fter the pleadings are closed—but early enough not to delay trial." FED. R. CIV. P. 12(c).

3

In his Second Complaint, Benavides re-pleaded his Section 1983 claim against Deputy Nunez.[2] (Dkt. 55). Deputy Nunez then filed the motion for judgment on the pleadings pursuant to Rule 12(c) that is presently before the Court. (Dkt. 59).

In his motion for judgment on the pleadings, Deputy Nunez argues that he is cloaked by qualified immunity because (1) Benavides "incorporates Nunez' sworn administrative statement into his pleadings [which] asserts that the shooting at issue was an accident"— *i.e.*, because Benavides did not plead a Fourth Amendment violation—and (2) the Second Complaint "is void of specific, plausible factual allegations that establish Nunez acted objectively unreasonable [sic] at the time of the shooting." (Dkt. 59 at 9). The Court considers Deputy Nunez' arguments below.

## LEGAL STANDARDS AND APPLICABLE LAW

### I. Federal Rule of Civil Procedure 12(c)

A Rule 12(c) motion is "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be rendered by looking to the substance of

---

[2] Deputy Nunez did not refile his Answer (Dkt. 34) to Benavides' Second Complaint. Ordinarily, when a defendant files an answer to a first amended complaint, but fails to refile their answer to a second amended complaint, their failure "may result in the allegations contained in Plaintiff's Second Amended Complaint being admitted and default judgment being rendered against them." *Lohr v. Gilman*, No. 3:15-CV-1931-BN, 2017 WL 11679158, at *2 (N.D. Tex. July 27, 2017). However, because "Defendants have been actively engaged in this litigation" and "Plaintiff's [second] amended complaint did not substantially alter the claims set forth in Plaintiff's [first] amended complaint[,] [t]he Court finds that Plaintiff has not suffered any prejudice as a result of Defendants' inadvertence in failing to file an answer to Plaintiff's [second] amended complaint." *Wilson v. Brown*, No. 04-3637, 2007 WL 1035026, at *1 n.1 (D.N.J. Apr. 3, 2007); *see also Nat'l Sec. Fire & Cas. Ins. Co. v. Townsend*, No. 4:17-CV-64-DMB-JMV, 2018 WL 4481872 (N.D. Miss. Sept. 17, 2018). Accordingly, the Court finds that Deputy Nunez' Answer (Dkt. 34) is the live pleading to Benavides' Second Complaint (Dkt. 55).

4

the pleadings and any judicially noticed facts." *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (internal citations omitted). A Rule 12(c) motion is evaluated under the same standard as a Rule 12(b)(6) motion. *See, e.g., Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019); *Doe v. MySpace, Inc.*, 528 F.3d 413, 418 (5th Cir. 2008). Thus, the court must accept the factual allegations of the complaint as true, view them in a light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).

A Rule 12(c) inquiry "focuses on the allegations in the pleadings and not on whether the plaintiff actually has sufficient evidence to succeed on the merits." *Ackerson v. Bean Dredging, LLC*, 589 F.3d 196, 209 (5th Cir. 2009). Therefore, dismissal is appropriate under Rule 12(c) if the plaintiff fails to state a claim upon which relief may be granted against the named defendant. *See, e.g., Doe*, 528 F.3d at 418.

## II.     42 U.S.C. § 1983

Section 1983 provides a private right of action for the deprivation of rights, privileges, and immunities secured by the Constitution or laws of the United States. Section 1983 reads in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. "[Section] 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Graham v. Connor*, 490 U.S. 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 (1979)).

To establish Section 1983 liability, a plaintiff must prove that she suffered "(1) a deprivation of a right secured by federal law (2) that occurred under color of state law, and (3) was caused by a state actor." *Victoria W. v. Larpenter*, 369 F.3d 475, 482 (5th Cir. 2004) (citing *Bush v. Viterna*, 795 F.2d 1203, 1209 (5th Cir. 1986)). A plaintiff must also show that the constitutional or statutory deprivation she suffered was intentional or due to deliberate indifference and not the result of mere negligence. *See Gobert v. Caldwell*, 463 F.3d 339 (5th Cir. 2006).

### III. The Fourth Amendment

"The Fourth Amendment protects individuals from being subjected to excessive force when they are physically apprehended or subdued by agents of the government." *Ramirez v. Guadarrama*, 3 F.4th 129, 134 (5th Cir. 2021). Whether an officer has used excessive force depends on "the facts and circumstances of each particular case, including [1] the severity of the crime at issue, [2] whether the suspect poses an immediate threat to the safety of the officers or others, and [3] whether he is actively resisting arrest or attempting to evade arrest by flight." *Graham*, 490 U.S. at 396.

## IV. Qualified Immunity

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982) (citations omitted). "The qualified immunity analysis has two components: (1) whether a plaintiff alleges or shows the violation of a federal constitutional or statutory right; and (2) whether the right in question was clearly established at the time of the alleged violation." *Ramirez*, 3 F.4th at 133. In order for a right to be clearly established, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

## ANALYSIS

### I. Benavides' alternative negligence pleading does not defeat his Fourth Amendment claims.

Deputy Nunez argues that Benavides has failed to state a claim under the Fourth Amendment because (1) "[o]nly intentional conduct of government actors invokes the protections of the Fourth Amendment" (Dkt. 59 at 7), and (2) Benavides' Second Complaint "incorporates Nunez' sworn administrative statement into his pleadings[, which] asserts that the shooting at issue was an accident." (Dkt. 59 at 7-8). Deputy Nunez further argues that Benavides' Second Complaint "asserts that [Benavides] was the unintended victim of an accidental shooting and such accidental conduct by Nunez [] is incompatible" with a Fourth

7

Amendment claim. (Dkt. 59 at 8). The Court disagrees with Deputy Nunez' interpretation of Benavides' Second Complaint.

In his Second Complaint, Benavides incorporates Deputy Nunez' statement that the shooting was an accident for the sole purpose of bolstering Benavides' TTCA negligence claim against Harris County. Specifically, Benavides stated that:

- "Additionally, and *alternatively* should Defendant Nunez' statements be taken as true, Deputy Nunez has alleged as follows concerning what he terms an 'accidental firing' of his weapon . . . ." (Dkt. 55 at 6) (emphasis added).

- "In further support of said *alternative* claim, Plaintiff would assert that *even if such firing were not intentional* . . . ." (Dkt. 55 at 7) (emphasis added).

- "As an *alternative* pleading, Plaintiff is therefore entitled to recover damages [] pursuant to the Texas Tort Claims Act . . . ." (Dkt. 55 at 8) (emphasis added).

Benavides' incorporation of Deputy Nunez' statement was not a binding judicial admission, but simply a pleading in the alternative as authorized by Rule 8(d). *See* FED. R. CIV. P. 8(d). "To qualify as a judicial admission, the statement must be . . . deliberate, clear, and unequivocal." *Heritage Bank v. Redcom Laboratories, Inc.*, 250 F.3d 319, 329 (5th Cir. 2001). "[W]here a party's pleadings are inconsistent—*e.g.*, pled in the alternative—any 'admission' cannot be unequivocal." *True Believers Ink 2, Corp. v. Russell Brands, LLC.*, No. 4:18-CV-00432, 2019 WL 4039888 (E.D. Tex. Aug. 27, 2019). Thus, the Court finds that Benavides' alternative arguments regarding Deputy Nunez' alleged negligence do not preclude Benavides from asserting a claim under the Fourth Amendment.

## II.     Benavides sufficiently pled intentionality on the part of Deputy Nunez.

Deputy Nunez correctly notes that the Fourth Amendment covers intentional acts only. (Dkt. 59 at 7). Thus, the Court must determine whether Benavides' Second Complaint sufficiently pled intent on the part of Deputy Nunez. The Court finds that Benavides met this burden.

As an initial matter, the Court observes that Benavides' prayer for punitive damages states that "[p]unitive damages may be assessed under §1983 when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." (Dkt. 55 at 9-10). In seeking punitive damages, Benavides makes clear that he believes Deputy Nunez' actions were intentional.

Moreover, in his Second Complaint, Benavides alleges that Deputy Nunez shot him in the leg "almost instantaneously" after he opened his daughter's front door. (Dkt. 55 at 2). Both the timing of the shooting and the fact that Benavides was struck by Deputy Nunez' bullet indicate intentionality on the part of Deputy Nunez. *See, e.g., Kalimah v. City of McKinney, Tex.*, 213 F. Supp. 2d 698, 703 (E.D. Tex. 2002) (finding that intentionality can be reasonably inferred when a police officer fires upon an innocent homeowner without provocation).

The Court thus finds that Benavides' Second Complaint sufficiently alleges that Deputy Nunez intentionally shot him in the leg. Having found that Benavides' alternative negligence arguments do not preclude his Fourth Amendment claim, and that Benavides pled intentionality on the part of Deputy Nunez, the Court turns to Deputy Nunez' qualified immunity argument.

### III. Deputy Nunez is not entitled to qualified immunity.

In his motion to dismiss, Deputy Nunez argued that he enjoys qualified immunity from Benavides' Section 1983 claim. (Dkt. 21). In denying Deputy Nunez' motion to dismiss, the Court found that Deputy Nunez is not entitled to qualified immunity. (Dkt. 33). Deputy Nunez then reasserted his qualified immunity defense in his motion for judgment on the pleadings. (Dkt. 59 at 6-9). The Court again finds that Deputy Nunez is not entitled to qualified immunity.

As an initial matter, to the extent that Deputy Nunez asserts the same grounds for qualified immunity as he asserted in his motion to dismiss, the Court incorporates by reference its previous order denying Deputy Nunez' assertion of qualified immunity. (Dkt. 33). Deputy Nunez' motion for judgment on the pleadings did not cite any relevant and material change to Fourth Amendment law that occurred after the Court's previous denial of qualified immunity. "[T]o conserve limited judicial resources, rulings should only be reconsidered where the moving party has presented substantial reasons for reconsideration." *State of La. v. Sprint Commc'ns Co.*, 899 F. Supp. 282, 284 (M.D. La. 1995). Nevertheless, to the extent that Deputy Nunez asserts different grounds for qualified immunity in his motion for judgment on the pleadings, the Court considers those arguments below.

A qualified immunity analysis involves a two-pronged inquiry: (1) "whether the officer's alleged conduct has violated a federal right" and (2) "whether the right in question was 'clearly established' at the time of the alleged violation, such that the officer was on notice of the unlawfulness of his or her conduct." *Cole v. Carson*, 935 F.3d 444, 451 (5th

10

Cir. 2019) (en banc). In Fourth Amendment excessive force cases, the first prong is met when a plaintiff alleges that he "suffers an injury that results directly and only from [an officer's] clearly excessive and objectively unreasonable use of force." *Joseph ex rel. Estate of Joseph v. Bartlett*, 981 F.3d 319, 332 (5th Cir. 2020) (citation omitted).

Deputy Nunez asserts that Benavides failed to satisfy the first prong of the qualified immunity analysis because Benavides did not allege intentionality on the part of Deputy Nunez and because Deputy Nunez' actions were objectively reasonable. (Dkt. 59 at 8-9). The Court addressed Deputy Nunez' intentionality argument above. As to Deputy Nunez' argument that his actions were objectively reasonable, the Court disagrees.

Deputy Nunez argues that his actions were objectively reasonable because (1) he was responding to a Priority One dispatch call, which indicated that an immediate threat to life existed, and that (2) it was reasonable for him to have his weapon drawn. (Dkt. 59 at 9). The Court accepts that it is reasonable for an officer to have his weapon drawn when responding to a Priority One dispatch call, but that is not where the inquiry ends. For purposes of Deputy Nunez' qualified immunity argument, the Court must consider whether he acted objectively unreasonably in shooting an unarmed man in the leg. Thus, the Court will assess Deputy Nunez' actions against the test of reasonableness under the Fourth Amendment provided in *Graham v. Connor*, 490 U.S. 386 (1989).

The first *Graham* factor asks the Court to consider "the severity of the crime at issue." *Graham,* 490 U.S. at 396. The Court is mindful that it must evaluate Deputy Nunez' conduct in light of the "tense, uncertain, and rapidly evolving circumstances in which

11

officers must often make split-second judgments." *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (internal quotation marks omitted). But here, there was no crime involved at all, much less a severe crime. The mere fact that Deputy Nunez may have believed Benavides was a burglar does not justify shooting him "without warning" or "sufficient time to respond." *Cole,* 935 F.3d at 449. Thus, Deputy Nunez' actions were unreasonable under the first *Graham* factor.

The second *Graham* factor, which evaluates "whether the suspect poses an immediate threat to the safety of the officers or others," is critical to the Court's analysis under the facts and circumstances of this particular case. *Graham,* 490 U.S. at 396. It appears, on the face of his Second Complaint, that Benavides never posed a threat to the safety of Deputy Nunez or any other officer. Indeed, Benavides alleges that he was shot "almost instantaneously" after he opened his daughter's front door, with his hands in the air. (Dkt. 55 at 2). Deputy Nunez does not argue, and the Court does not accept, that it is objectively reasonable to shoot an unarmed man moments after he opens the front door, without apparent justification. Thus, Deputy Nunez' actions were unreasonable under the second *Graham* factor.

And finally, the third *Graham* factor requires the Court to consider whether the suspect "is actively resisting arrest or attempting to evade arrest by flight." *Id*. "The timing, amount, and form of a suspect's resistance are key to determining whether the force used by an officer was appropriate or excessive." *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020). But Benavides (1) was never a suspect, (2) never resisted,

12

and (3) never attempted to evade arrest by flight. Benavides was merely going outside to smoke a cigarette and wait for the police to arrive. Surrounded by his wife, children, and grandchildren, Benavides was shot in the leg moments after opening the front door. Thus, Deputy Nunez' actions were unreasonable under the third *Graham* factor.

The Court finds that Benavides sufficiently alleged a constitutional violation given that (1) he sufficiently pled intentionality on the part of Deputy Nunez and (2) Deputy Nunez' actions were objectively unreasonable. Thus, the Court finds that Benavides has satisfied the first prong of the qualified immunity inquiry.

Finally, the Court turns to the second prong of the qualified immunity analysis— *i.e.*, whether Deputy Nunez' actions violated clearly established law. As the Supreme Court held in *Ashcroft v. al-Kidd*, "a case directly on point" is not required when "every reasonable official would have understood that what he is doing violates" clearly established law. 563 U.S. 731, 741 (2011) (cleaned up). The Fifth Circuit has made clear that "in an obvious case, analogous case law is not needed because the unlawfulness of the challenged conduct is sufficiently clear." *Joseph*, 981 F.3d at 330 (internal quotation marks omitted). "The *sine qua non* of the clearly-established inquiry is 'fair warning'" to a reasonable officer. *Morgan v. Swanson*, 659 F.3d 359, 372 (5th Cir. 2011) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

The Court finds that the unlawfulness of the challenged conduct here is sufficiently obvious to assume notice on the part of Deputy Nunez. The facts and circumstances of this case are such that no reasonable officer would have believed that shooting Benavides was

a lawful act. As discussed previously, in light of the fact that Benavides (1) posed no threat, (2) was not resisting, (3) was not fleeing, (4) was unarmed, and (5) was shot "almost instantaneously" after opening the front door, the Court finds that Benavides has satisfied the second prong of the qualified immunity analysis on obviousness grounds. Deputy Nunez is not entitled to qualified immunity at this stage.

## CONCLUSION

For the reasons stated above, the factual allegations in Benavides' Second Complaint are sufficient to state a claim for excessive force under Section 1983, and Deputy Nunez does not enjoy qualified immunity over that claim.

Accordingly, Deputy Nunez' motion for judgment on the pleadings (Dkt. 59) is **DENIED**.

SIGNED at Houston, Texas, this 23rd day of June, 2023.

_____
GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE