United States District Court
Southern District of Texas
**ENTERED**
September 30, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STEPHEN BENAVIDES, | § | |
|     Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. 4:21-CV-1289 |
| | § | |
| HARRIS COUNTY, TEXAS, | § | |
| and DEPUTY J. NUNEZ, Individually, | § | |
|     Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

This case turns on whether a deputy intentionally or accidentally shot an unarmed man in the doorway of a home. This is a quintessential genuine issue of material fact that must be resolved by a jury. Pending before the Court is a motion for summary judgment filed by Harris County Sheriff Deputy Jose Nunez ("Nunez"). (Dkt. 81). After carefully reviewing the motion, response, reply, applicable law, and the entire record, the motion is **DENIED.**

### FACTUAL BACKGROUND

One evening in 2019, Sandra Garibay ("Garibay") called 911 and said she needed police because she thought an intruder had been in her house. She was home with her children. She said her father, Stephen Benavides, was on his way to her house and would be driving a white Chevy pickup truck. Nunez and another deputy responded, and much of what followed was captured on Nunez's body camera footage.[1] Nunez approached the

---

[1] *See Walker v. City of Houston*, No. 22-20537, 2023 WL 6457926, at *3 (5th Cir. Oct. 4, 2023) ("Although we view the evidence favorably to the nonmovant, we nevertheless 'assign greater

house, which had a white pickup truck parked on its front lawn, and said, "Looks like a crash." Turning on his flashlight, he stopped to inspect the truck. He pulled out his gun as he proceeded toward the house. He inspected the areas around the house quietly including the lawn to either side of the house, the front door, and the vehicle parked on the driveway. He then went to the front door and put his right hand on the doorknob. The door appeared to move. (Benavides testified that he "went to go open the front door.") Nunez raised his gun in his left hand as the door opened and shot Benavides in his left leg. As Nunez lowered the gun, he switched it into his right hand.



Both of Nunez's hands were on the gun when he fired, as can be seen in this picture taken from the body camera footage. The video, however, does not establish whether

---

weight, even at the summary judgment stage, to the ... video recording[ ] taken at the scene.'") (quoting *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022)).

Nunez was transitioning the gun from one hand to other when he fired or he was putting both hands on the gun in preparation to shoot whoever was behind the door. Nunez claims the former and that he accidentally shot Benavides. Benavides argues the video shows Nunez intentionally shooting Benavides.

Benavides brought an excessive force claim against Nunez under the Fourth Amendment. In his pending motion, Nunez argues that his action was not objectively unreasonable. He also argues that he shot Benavides accidentally and that accidental shootings do not violate the Fourth Amendment.

## APPLICABLE LAW

### I. Summary Judgment Standard

Under Federal Rule of Civil Procedure Rule 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). "A genuine dispute of material fact exists when the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Burrell v. Prudential Ins. Co. of Am.*, 820 F.3d 132, 136 (5th Cir. 2016) (quoting *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). A fact is material if "its resolution could affect the outcome of the action." *Nunley v. City of Waco*, 440 Fed. App'x 275, 277 (5th Cir. 2011). The court must view the facts and draw all reasonable inferences in the light most favorable to the nonmoving party. *Darden v. City of Fort Worth*, 880 F.3d 722, 727 (5th Cir. 2018). The Court does not, however, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts to survive summary judgment." *Salazar-Limon*

*v. City of Houston*, 826 F.3d 272, 277 (5th Cir. 2016), as revised (June 16, 2016) (internal quotation marks and citation omitted).

"Where the non-movant bears the burden of proof at trial, 'the movant may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating . . . that there is an issue of material fact warranting trial." *Kim v. Hospira, Inc.*, 709 F. App'x 287, 288 (5th Cir. 2018) (quoting *Nola Spice Designs, L.L.C. v. Haydel Enters., Inc.*, 783 F.3d 527, 536 (5th Cir. 2015)). If the movant produces evidence that tends to show that there is no dispute of material fact, the nonmovant must then identify evidence in the record sufficient to establish the dispute of material fact for trial. *Celotex*, 477 U.S. at 321–23. The nonmovant must "go beyond the pleadings and by her own affidavits, or by depositions, answers to interrogatories and admissions on file, designate specific facts showing that there is a genuine issue of material fact for trial." *Giles v. Gen. Elec. Co.*, 245 F.3d 474, 493 (5th Cir. 2001) (citing *Celotex*, 477 U.S. at 324). "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertion, or by only a scintilla of evidence.'" *Jurach v. Safety Vision, L.L.C.*, 642 F. App'x 313, 317 (5th Cir. 2016) (quoting *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005)).

## ANALYSIS

The Court concludes that there is a genuine issue of material fact in the record that precludes summary judgment as a matter of law.

In his pending motion Nunez asserts the defense of qualified immunity to this action. In civil rights actions in which the non-movant is suing a government official, the

issue of qualified immunity alters the summary judgment analysis. *Brown v. Callahan*, 623 F.3d 249, 253 (5th Cir. 2010). If the defense of qualified immunity is raised, the burden shifts to the non-movant to rebut it. *Id*. All inferences are still drawn in the non-movant's favor. *Id*.

"The qualified immunity defense has two prongs: whether an official's conduct violated a statutory or constitutional right of the plaintiff; and whether the right was clearly established at the time of the violation." *Id*. For the right to have been clearly established for purposes of qualified immunity, the contours of the right must have been sufficiently clear that a reasonable official would have understood that what he was doing violated that right. *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008). The unlawfulness of the official's actions must have been readily apparent from sufficiently similar situations, though there need not have been commanding precedent holding the very action in question unlawful. *Id*. at 236–37. The first prong of the qualified immunity analysis is governed by current law, while the second prong is governed by the law as it was clearly established at the time of the conduct in question. *Petta v. Rivera*, 143 F.3d 895, 899–900 (5th Cir. 1998). The legal standards can, and sometimes will, conflict, but both prongs must be satisfied. *Id*.

### A. The video and the Court's prior *Graham* analysis

The Fourth Amendment guarantees the right to be free from excessive force during an arrest. *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012). To succeed on the merits of a Fourth Amendment claim, "a plaintiff must demonstrate (1) an injury, which (2) resulted directly and only from the use of force that was clearly excessive to the need; and the excessiveness of which was (3) objectively unreasonable." *Jackson v. Gautreaux*,

3 F.4th 182, 186 (5th Cir. 2021) (quoting *Hutcheson v. Dallas County*, 994 F.3d 477, 480 (5th Cir. 2021)).

"Excessive force claims are necessarily fact-intensive; whether the force used is 'excessive' or 'unreasonable' depends on 'the facts and circumstances of each particular case.'" *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). In assessing the reasonableness of the officers' actions, the courts look to the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the suspect is actively resisting arrest or attempting to flee. *Graham*, 490 U.S. at 396. Courts also "consider 'the relationship between the need [for force] and the amount of force used.'" *Betts v. Brennan*, 22 F.4th 577, 582 (5th Cir. 2022) (alterations in original). "The 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

The Court previously applied *Graham* to the facts of this case as alleged by Benavides and, based on that analysis, denied Nunez's motion for judgment on the pleadings. (Dkt. 75). On this summary judgment record, the Court sees no reason to reconsider its conclusion that Nunez is not entitled to qualified immunity.

Nunez argues that the Court's previous analysis of the *Graham* factors, in light of the summary judgment evidence, "is wrong." (Dkt. 81 at 24). To the contrary, Nunez's application of the summary judgment standard is wrong, as his analysis of the *Graham* factors relies wholly on his (the movant's) version of the facts and evidence and ignores

Benavides's (the non-movant's) version—including Benavides's eminently reasonable interpretation of Nunez's own body camera footage.

According to Nunez, the evidence shows that "this is clearly not a case of excessive force but an accident." (Dkt. 81 at p. 26). Nunez contends that

> [t]here is no dispute that he reached for the door with his right hand, and moved the gun to his non-dominant left hand. It can be seen on the video. When the door suddenly opened, his weapon accidentally discharged.
> Dkt. 81 at p. 22.

The Court disagrees with Nunez that his body camera footage conclusively establishes that the shooting was accidental. The body camera footage shows that Nunez had both hands on his weapon when he fired it. One could reasonably view the footage as showing that Nunez was deliberately aiming his weapon, intending to shoot whoever was behind the door. Since there are at least two different reasonable ways to view the body camera footage—and since at least one of those ways supports Benavides's account of the shooting—the Court will not "play[] junior-varsity jury" and will let an actual jury decide which view of the footage is the correct one. *See Spiller v. Harris County, Texas*, 113 F.4th 573, 582 (5th Cir. 2024) (Willett, J., concurring).

The fact that Benavides's view of the video is reasonable also renders unavailing Nunez's reliance on *Bryant v. Gillem*, 965 F.3d 387 (5th Cir. 2020). In *Gillem*, dashcam footage showed a deputy approaching a suspect who was on the ground in the grass. *Id.* at 390. The deputy put his pistol into his left hand and drove his right knee into the suspect's back. *Id.* Still holding the firearm with his left hand and reaching with his right for the suspect's hands, the deputy shot the suspect in his left shoulder. *Id.* The Fifth Circuit

affirmed the district court's grant of summary judgment in favor of the deputy, holding that the district court was correct in concluding that the summary judgment record contained "no competent summary judgment evidence reasonably showing that [the deputy's] failure to holster his firearm and his discharge of the firearm were intentional acts." *Id.* at 392 (quotation marks omitted).

*Gillem* is distinguishable. According to the Fifth Circuit's description of the video in that case, "there [wa]s no fact dispute that [the deputy] unintentionally kept his firearm in his hand as he sought to restrain [the plaintiff]." *Id.* at 393. Here, by contrast, a person viewing Nunez's body camera footage could reasonably conclude that Nunez intentionally drew his weapon, intentionally aimed it with both hands, and intentionally fired it at Benavides. And the mere fact that Nunez may have believed Benavides was an intruder does not justify shooting him "without warning" or "sufficient time to respond." *Cole v. Carson*, 935 F.3d 444, 449 (5th Cir. 2019) (en banc).

## CONCLUSION

There is a genuine issue of material fact about whether Nunez shot Benavides intentionally or accidentally. This fact will determine whether Nunez violated the Fourth Amendment and ultimately whether he is entitled to qualified immunity. Therefore, summary judgment cannot be granted as a matter of law. Nunez's motion is **DENIED**.

SIGNED at Houston, Texas on September 30, 2024.

GEORGE C. HANKS, JR.
UNITED STATES DISTRICT JUDGE